FILED23 FEB '12 16:04USDC-ORP

**Dana L. Sullivan, OSB No. 94483**
Email: dana@baaslaw.com
**Kristine Lambert, OSB No. 01068**
Email: Kristine@baaslaw.com
BUCHANAN ANGELI ALTSCHUL
   & SULLIVAN LLP
321 SW 4th Ave.
Portland OR 97204
Telephone:    (503) 974-5015
Facsimile:    (971) 230-0337

      Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**CV '12 - 0328 - HZ**

| | |
|---|---|
| **MONIQUE DESPAIN,** | Civil No. |
| Plaintiff, | |
| v. | COMPLAINT |
| | (Violations of 42 U.S.C. § 2000e, *et seq.*; |
| **EVERGREEN INTERNATIONAL** | ORS 659A.030; 38 U.S.C. § 4311 et. seq.; |
| **AVIATION, INC. and TIMOTHY** | ORS 659A.082; ORS 652.355; |
| **WAHLBERG, an individual,** | ORS 659A.199) |
| Defendants. | DEMAND FOR JURY TRIAL |

## INTRODUCTION

1.     This is an action for declaratory, injunctive and monetary relief, including

attorneys' fees and costs, to redress the deprivation of rights secured to Plaintiff by federal and

state employment rights statutes.

## JURISDICTION

2.     Jurisdiction is conferred upon this Court by 28 U.S.C. §1331, federal question

jurisdiction.

Page 1 -    **COMPLAINT**

#45614

3.      Plaintiff requests this Court to invoke its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to causes of action based on Oregon law, because the state claims arise from the same nucleus of operative facts as the federal claims.

4.      Venue is appropriate in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the claims arose in this judicial district.

5.      Plaintiff exhausted her administrative remedies as to all claims for which administrative filing is a prerequisite by filing a complaint with the Equal Employment Opportunity Commission ("EEOC") on October 26, 2011.

### ADMINISTRATIVE EXHAUSTION

6.      On January 9, 2012, Plaintiff requested her right to sue notice from the EEOC based on the fact that the EEOC could not complete its investigation process within the required 180 days.

7.      On January 25, 2012, the EEOC issued a right to sue notice.   Plaintiff filed this complaint prior to the expiration of her 90 day right to sue notice.

### PARTIES

8.      Plaintiff, Monique DeSpain (hereinafter "Plaintiff"), is currently a resident of McMinnville, Oregon.   From January 10, 2011 until July 22, 2011, Plaintiff was an employee of defendant Evergreen International Aviation, Inc. and reported to defendant Timothy Wahlberg and Delford Smith.

9.      Defendant Evergreen International Aviation, Inc. ("Evergreen") was, at all material times, Plaintiff's employer and employed 15 or more employees.

10.      Defendant Timothy Wahlberg ("Wahlberg") is an individual and was, at all relevant times, Plaintiff's supervisor and the Chairman of defendant Evergreen.

Page 2 -      **COMPLAINT**

## GENERAL ALLEGATIONS

11.      Evergreen hired Plaintiff as its General Counsel on or about January 10, 2011.

12.      Plaintiff is an experienced, competent attorney, familiar with the aviation industry, the Department of Defense and the international arena.   Plaintiff has an excellent reputation, strong business background, strategic abilities, outstanding references and strong academic credentials.

13.      During conversations Delford Smith, founder of Evergreen, had with Plaintiff, he described her with admiration and respect as a "fireball" and stated she was a "warrior" and "just what the company needed."   He stated that Plaintiff's predecessor was "an angel but had no fight in her."

14.      As part of the pre-employment process, Plaintiff interviewed with the presidents of several of Evergreen's wholly owned subsidiaries including Evergreen International Airlines, Inc. and Evergreen Helicopters, Inc.   Plaintiff understood that she would be performing work for each of these companies as part of her normal and expected job duties.

15.      Plaintiff was thrilled to join Evergreen, made significant personal sacrifices to begin work immediately, and anticipated a long and successful career.

16.      As part of the parties' pre-employment negotiations which took place almost exclusively with Dan Klump, Vice President of Human Resources, Plaintiff was candid about a previous Air Force commitment in January and offered to begin work with Evergreen after that obligated week of Air Force duty.   Plaintiff also advised Mr. Klump that she had a family obligation in June which would require a week of time off.

17.      Mr. Klump, on behalf of Evergreen, asked that Plaintiff begin work immediately,

and agreed that she would be free to attend to her Air Force commitment and her family obligation in June, with pay, as a term of her employment (among other things).

18.      Plaintiff is and was at all material times a Lieutenant Colonel in the United States Air Force or the Oregon Air National Guard.

19.      This discussion regarding time off was key to the negotiations as it was a sticking point for Plaintiff that Evergreen's general policy did not permit any vacation time until an employee completed one full year of employment.

20.      Mr. Klump, on behalf of Evergreen, agreed to provide paid time off even though it was not Evergreen's stated practice to allow paid vacation during an employee's first year.

21.      After starting her position, Plaintiff observed male executives had various workarounds to this policy and that they were able to enjoy paid time off with their families and also telecommuting opportunities that Mr. Klump specifically told Plaintiff were impermissible business practices at Evergreen.

22.      Plaintiff took the first two weeks of work to get oriented with Evergreen's various companies and outstanding legal issues.   She then took the requested military time off without incident, proudly revealing to several high-level military officials (many of whom she had listed as references for Evergreen) that she had indeed accepted the position as Evergreen's General Counsel.

23.      Upon returning from her Air Force duty, Plaintiff jumped into work, putting in long days and enjoying the challenges with which she was faced.

24.      Plaintiff began identifying areas where the company was at risk legally and actively seeking solutions to outstanding legal issues with which the company had been grappling.   She made it a priority to manage languishing, yet expensive litigation matters.   She was outspoken

Page 4 -      **COMPLAINT**

about Evergreen problems that needed immediate attention.   Her tenacity in attacking the tasks assigned to her was in line with her straight-shooting, aggressive problem-solving abilities and Mr. Smith's "fireball" and "warrior" evaluations of her.

25.    Plaintiff's work included projects on behalf of Evergreen and its operating companies, in particular Evergreen International Airlines, Inc. and Evergreen Helicopters, Inc.

26.    While it was clear to Plaintiff that Mr. Klump and other male executives were permitted to raise and discuss tough issues, Mr. Wahlberg denied Plaintiff the same freedom.   He routinely cut her off in mid-sentence and either picked up the phone to call someone else or asked a male in the room to explain or describe issues she raised and then refused to allow her to communicate any further.

27.    Mr. Wahlberg became agitated when Plaintiff asked questions, when Plaintiff insisted on participating in meetings or when Plaintiff pressed him for his stance on tough issues. Mr. Wahlberg made snide comments about the questions Plaintiff raised and easily became annoyed and dismissive when she contributed to discussions.   Often Mr. Wahlberg would just glare at Plaintiff across the boardroom table.   Mr. Wahlberg actively undermined Plaintiff's developing relationships with other senior executives.   Plaintiff was warned by these men that Mr. Wahlberg was actively undermining her.

28.    At one point during a difficult settlement negotiation, Mr. Wahlberg told Plaintiff that he "didn't like her approach" and that she "asked too many questions."   At a follow up meeting to discuss her management of litigation issues with Mr. Smith, Mr. Wahlberg stated he thought Plaintiff was "certainly smart enough" however, he opined, he did not think she would be successful at Evergreen.   Mr. Smith assured Plaintiff that he was very pleased with her and her performance, reiterated she was just what the company needed and that he could not explain Mr.

Wahlberg's uneven-handed behavior although he had observed it on other occasions as well.

29.     Mr. Wahlberg did not treat Plaintiff's male peers in the same manner as he treated her.   He readily involved them in decision making.   He fielded their questions on a variety of matters without interruption, criticism or snide comments.   He was, in general, more responsive and positive in his interactions with Plaintiff's male peers and treated the male executives with significantly more respect than he afforded Plaintiff.

30.     Plaintiff shortly realized that Mr. Wahlberg expected her to work in a stereotypically appropriate manner for a woman.   That is, he expected her to be deferential, compromising, affirming and quiet.

31.     This is consistent with what Plaintiff now knows to be the personality of the female attorney she replaced.   She has been described to Plaintiff as quiet, insecure, deferential and unwilling to advocate aggressively.

32.     Plaintiff, by sharp contrast, behaved like any other member of the executive team. She insisted on attending executive committee meetings and injected her opinion on matters of significance, particularly when legal issues were involved.

33.     Had Plaintiff been a man, Mr. Wahlberg would have rewarded her strong work ethic and no-nonsense style with continued opportunity to work at Evergreen.

34.     Plaintiff also discovered relatively early on in her employment that her communication style and willingness to speak in a forthright and direct manner caused her to be referred to as "the other Monique" by Mr. Klump, in contrast with "the nice Monique," who was a female member of the human resources staff reporting directly to Mr. Klump.

35.     Mr. Klump also expressed frustration with Plaintiff's initiative in visiting Evergreen EAGLE bases to negotiate leases, brief employees on personnel discipline issues and

Page 6 -     **COMPLAINT**

investigate various EEOC complaints against Evergreen/EAGLE.

36.     Mr. Smith approved Plaintiff's travel for these purposes and thanked her for providing him with honest and candid information he was unable to get from Mr. Klump, Mr. Wahlberg or others on the management team.

37.     Mr. Wahlberg's negative reaction to Plaintiff's forthright and assertive work style caused him to exclude her from participation in legal matters that should have fallen squarely within her purview.

38.     For example, Mr. Wahlberg was openly annoyed and disapproving when the President of Evergreen Helicopters, Max Wiley, asked Plaintiff to attend and participate in the HAI (Helicopter Association International) Convention in Florida.   Mr. Wahlberg reacted by excluding Plaintiff from meetings while at the convention, even when legal issues were being discussed.

39.     Plaintiff was physically located in the building with Evergreen Helicopter executives and routinely performed work on behalf of Evergreen Helicopters.

40.     Additionally, Plaintiff was actively involved and performing work for Evergreen International Aviation, Inc. including negotiations related to their pilots.

41.     Nevertheless, Mr. Wahlberg refused to allow Plaintiff to attend critical ALPA negotiations in Washington DC, notwithstanding her significant role in the Evergreen executive team's preparation for the negotiations and the objections of the executive team and outside counsel.

42.     Mr. Wahlberg gave no justification for the last minute exclusion of Plaintiff from the negotiations other than he preferred not to "change the dynamic" of the negotiations.

43.     Plaintiff discussed briefly with Mr. Wahlberg and with Mr. Smith her concerns

regarding her exclusion from the ALPA negotiation.   Mr. Smith chose to not get involved and she chose not to pursue the matter further even though she was very disappointed by Mr. Wahlberg's decision.

44.     Plaintiff later discovered that Mr. Wahlberg allowed a male attorney from the outside counsel's law firm to join and participate in the negotiations even though he had not previously been involved in the negotiations.

45.     Mr. Wahlberg's stated perception that Plaintiff's participation might change the dynamic of the discussions was a reference to Plaintiff's gender and the fact that she would have been the only woman at the negotiation table.   Had Mr. Wahlberg been referring to the fact that she had not previously attended ALPA negotiations, he presumably would have shared the same concern about including the male attorney from outside counsel's law firm.

46.     Nearly six months into the job, Plaintiff took her pre-planned family vacation. When she reminded Mr. Smith of the trip she was about to take, he encouraged her to spend that time with her sons and father and chatted briefly with her about Alaska.

47.     When Mr. Wahlberg and Mr. Klump were reminded of the upcoming vacation, neither raised any issues at that time regarding her impending absence or the paid time off.

48.     Shortly before this vacation in late June, Plaintiff completed the move of her two school-age children and their entire household from Eugene to McMinnville.   Prior to that time she had been commuting home only on weekends and staying at a hotel in McMinnville until she was able to rent a suitable home.

49.     On July 17, 2011, during her monthly weekend drill with the Oregon Air National Guard, Plaintiff forwarded her newly-released fiscal year 2011 drill schedule to Mr. Wahlberg, Mr. Klump and Mr. Smith's secretary.

50.     This schedule listed all of the dates she would be committed to weekend military

obligations.

51.     Plaintiff's orders were issued under the authority of 32 U.S.C. § 502.

52.     Plaintiff also informed Mr. Wahlberg and Mr. Klump that she would work at the

base on the Friday prior to each drill weekend to fulfill her annual training requirements.

53.     A day or two after sending the email, Plaintiff asked Mr. Klump if he had received

her military drill schedule and if that would serve as sufficient notice to Human Resources.   Much

to Plaintiff's surprise, Mr. Klump stated he had received it, but then asked, "So is THAT what you

people do?" and started mocking the duty schedule's posting inclusion of references to   "Family

Day" and "Christmas Party" associated with two of the 12 monthly training activities.

54.     Mr. Klump's derogatory remark disappointed and troubled Plaintiff, but as both

were heading off in different directions down the hall, she chose not to inform him of what actually

occurs to support an operational fighter wing, in the course of these monthly, two-day training

sessions.

55.     While Evergreen enjoys widespread perceptions as being a supporter of the

military and has hired numerous retired military personnel, Plaintiff was the only active duty

officer in the executive ranks employed by Evergreen.

56.     Plaintiff was terminated within three days of this exchange with Mr. Klump.

57.     Less than 24 hours before Plaintiff's abrupt termination, she introduced Mr. Smith

to a highly-qualified candidate for the paralegal position Evergreen had open and posted for some

time.

58.     Mr. Armando Segura so impressed Plaintiff that Plaintiff proceeded to introduce

him to Mr. Smith, Mr. Wahlberg, and Mr. Klump, as is required in the Evergreen hiring process.

Page 9 -      **COMPLAINT**

59.     When Plaintiff called Mr. Smith to ask his thoughts on Mr. Segura, Mr. Klump was sitting in his office.    On speakerphone, Mr. Smith informed Plaintiff that he "loved" the candidate and thought: "He's great, BUT, he's Hispanic!"    Mr. Smith informed Plaintiff that he would love to have him anywhere in the company except the legal department.    Mr. Smith explained that over 60 percent of all claims against the company were asserted by Hispanics and he did not want Mr. Segura to "have a dog in that fight."

60.     Plaintiff respectfully disagreed with Mr. Smith' assessment by stating that it had not been her observation that Hispanics were the primary complainants against Evergreen and asked him to reconsider his position on not permitting them to work in the legal department.

61.     Mr. Smith replied, "What part of NO don't you understand?" and Plaintiff immediately dropped the issue with Mr. Smith and Mr. Klump.

62.     However, when Mr. Smith sent Sam Wright, President of EAGLE, over to Plaintiff's office to pick up Mr. Segura's résumé, Plaintiff told Mr. Wright squarely that Evergreen's failure to hire or even consider Mr. Segura for the paralegal position, for which he was fully-qualified, could be perceived as discriminatory and was flat out wrong.

63.     Plaintiff firmly believes that Mr. Klump was very uncomfortable with how outspoken she was in her interactions with Evergreen/EAGLE management about Mr. Segura's candidacy.

64.     On July 22, 2011, only one day after Plaintiff urged managers not to decline a candidate strictly due to his national origin and within days of presenting her military service obligations to Mr. Klump and Mr. Wahlberg, Plaintiff received a note from Evergreen's payroll clerk, Ms. Donna Frasier.

65.     Ms. Frasier advised Plaintiff that Mr. Klump and Mr. Wahlberg had directed her to

withhold a week's salary from Plaintiff's next paycheck.

66.     Plaintiff immediately called Mr. Klump to ask about the deduction and asked him to honor the agreement regarding paid time off that they had made previously.

67.     Mr. Klump advised Plaintiff that she was being docked a week of pay due to the time off she had taken in June and he directed further questions to Mr. Wahlberg.

68.     Plaintiff then went directly to Mr. Wahlberg's office to ask why he had authorized a payroll deduction without her knowledge.

69.     Mr. Wahlberg responded that no one at Evergreen was entitled to time off during their first year and he did not understand why she would expect to be paid when she was not at work.

70.     Plaintiff explained that Evergreen had agreed to provide paid time off as a term of her employment.   She further stated that she had accepted the position and taken the promised time off in reliance upon Evergreen's statements.   Both the first week, in January, and the second week, in June, had been paid without issue.

71.     Plaintiff did not understand why leave issues were being raised for the first time at this meeting.

72.     Plaintiff was understandably frustrated by Mr. Wahlberg's refusal to "do the right thing."

73.     Mr. Wahlberg ended their meeting after listening to Plaintiff's complaint.

74.     Within an hour of this conversation, Mr. Wahlberg and Mr. Klump arrived at Plaintiff's office and terminated her employment.   They insisted that Plaintiff leave immediately, demanding her cell phone, her keys to the office, and immediately locking and cutting off computer access.

75.     When Plaintiff asked for an explanation of their decision, Mr. Wahlberg stated simply that they had "come to an impasse" and no longer wished to retain her services.

76.     Plaintiff was on her way to a meeting at the airline (that she had arranged to prepare for a hearing with the FAA the following week) and was not permitted to communicate with anyone, not even her law clerk. Plaintiff was afforded no opportunity to conclude the various cases she was managing with outside counsel, leaving those attorneys with the likely perception that she had engaged in serious misconduct or was grossly incompetent.

77.     Evergreen's abrupt termination of Plaintiff was devastating on many levels. Not only was her reputation severely damaged in the legal community, but also Plaintiff has significant relationships with high-ranking military and government officials, including Department of Defense personnel. The termination severely damaged her reputation with these individuals by creating the perception that she had engaged in serious misconduct or was incapable of handling the duties assigned by Evergreen.

78.     Plaintiff also had only recently moved her children to McMinnville, but had, with Mr. Smith's personal encouragement, taken the time to sign them up to be Discovery Ambassadors at Evergreen's aviation museum. Plaintiff, and her impressionable 13 year old boys, suffered embarrassment and humiliation due to the fact that the boys felt compelled to adhere to their commitment as volunteers, but also to report to other Evergreen personnel that their mother had been fired from her position. This occurred within weeks of the children moving to an entirely new community -- their only move in nine years.

## FIRST CLAIM FOR RELIEF
## GENDER DISCRIMINATION
### Violation of 42 U.S.C. §§ 2000e et. seq.
### Against Defendant Evergreen

79.     Plaintiff incorporates by reference the allegations set forth in paragraphs 11

Page 12 -    **COMPLAINT**

through 78.

80.     Defendant discriminated against and terminated Plaintiff because of her sex and because of its belief that Plaintiff, being a woman, should act in a stereotypically feminine manner.

81.     Defendant subjected Plaintiff to unlawful sex stereotyping by taking adverse actions against Plaintiff for displaying characteristics that are considered positive when exhibited by male executives.

82.     Defendant treated Plaintiff less favorably than similarly situated male coworkers because of Plaintiff's sex.

83.     Plaintiff is entitled to a declaration that defendant has violated her statutory right to be free of sex discrimination.

84.     Plaintiff is entitled to reinstatement to her position and an injunction against future discrimination.

85.     As a direct and proximate result of defendant's conduct, Plaintiff has suffered lost income and benefits, including prejudgment interest, all to her economic detriment, in an amount to be determined at trial.

86.     As a direct and proximate result of defendant's discriminatory conduct, Plaintiff has suffered embarrassment, anxiety, humiliation, anger, emotional distress, inconvenience, and loss of enjoyment of life and is entitled to an award of compensatory damages in the amount of $500,000.

87.     The actions of defendant as alleged herein were intentional, willful, and with reckless disregard to Plaintiff's statutory rights.   Such conduct exceeds the bounds of social toleration and is of the type that punitive damages deter.   Plaintiff, therefore, is entitled to an award of punitive damages in an amount of $500,000.

88.     Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorneys' fees, expert fees and costs incurred herein

## SECOND CLAIM FOR RELIEF
## GENDER DISCRIMINATION
### Violation of ORS 659A.030
### Against Defendant Evergreen

89.     Plaintiff incorporates by reference the allegations set forth in paragraphs 11 through 78.

90.     Defendant Evergreen discriminated against and terminated Plaintiff because of her sex and because of its belief that Plaintiff, being a woman, should act in a stereotypically feminine manner.

91.     Defendant subjected Plaintiff to unlawful sex stereotyping by taking adverse actions against Plaintiff for displaying characteristics that are considered positive when exhibited by male executives.

92.     Defendant treated Plaintiff less favorably than similarly situated male coworkers because of Plaintiff's sex.

93.     Plaintiff is entitled to a declaration that defendant has violated her statutory right to be free of sex discrimination.

94.     Plaintiff is entitled to reinstatement to her position and an injunction against future discrimination.

95.     As a direct and proximate result of defendant's conduct, Plaintiff has suffered lost income and benefits, including prejudgment interest, all to her economic detriment, in an amount to be determined at trial.

96.     As a direct and proximate result of defendant's conduct, Plaintiff has suffered and will continue to suffer from emotional distress, anxiety, humiliation, embarrassment, damage to

her professional reputation, and diminished earning capacity, and is entitled to an award of compensatory damages in the amount of $500,000.

97.    The actions of defendant as alleged herein were intentional, willful, and with reckless disregard to Plaintiff's statutory rights.   Such conduct exceeds the bounds of social toleration and is of the type that punitive damages deter.   Plaintiff, therefore, is entitled to an award of punitive damages in an amount of $500,000.

98.    Plaintiff is also entitled to recover her reasonable attorneys' fees and costs pursuant to ORS 20.107 and ORS 659A.885(1).

**THIRD CLAIM FOR RELIEF**
**DISCRIMINATION BASED ON MILITARY LEAVE**
**Violation of 38 U.S.C. §4311 et. seq.**
**Against Defendant Evergreen**

99.    Plaintiff incorporates by reference the allegations set forth in paragraphs 11 through 78.

100.    Plaintiff is a Lieutenant Colonel and Staff Judge Advocate for the 142nd Fighter Wing, Portland, Oregon, and serves under the authority of the United States Air Force and the Oregon Air National Guard.

101.    Evergreen willfully discriminated against and terminated Plaintiff because of her request to take military leave to fulfill her military service obligations.

102.    Evergreen's actions violated 38 U.S.C. §4311 et. seq.

103.    Plaintiff is entitled to a declaration that Evergreen violated Plaintiff's right to be free from discrimination in the workplace due to her service in the uniformed services.

104.    Plaintiff is entitled to reinstatement to her position and an injunction against future discrimination.

105.    As a direct and proximate result of defendant's conduct, Plaintiff has suffered lost income and benefits, including prejudgment interest, all to her economic detriment, in an amount to be determined at trial.

106.    The actions of defendant as alleged herein were intentional, willful and in reckless disregard of Plaintiff's rights.   Plaintiff, therefore, is entitled to liquidated damages in an amount equal to her economic damages.

107.    Plaintiff has hired legal counsel to prosecute her claims and is entitled to her reasonable attorneys' fees and costs incurred, including expert witness fees, pursuant to 38 U.S.C. §4323(h)(2).

**FOURTH CLAIM FOR RELIEF**
**DISCRIMINATION BASED ON MILITARY LEAVE**
**Violation of ORS 659A.082**
**Against Defendant Evergreen**

108.    Plaintiff incorporates by reference the allegations set forth in paragraphs 11 through 78.

109.    Plaintiff is a Lieutenant Colonel and Staff Judge Advocate for the 142nd Fighter Wing, Portland, Oregon, and serves under the authority of the United States Air Force and the Oregon Air National Guard.

110.    Evergreen discriminated against and terminated Plaintiff after she requested military leave to fulfill her military service obligations.

111.    Evergreen's actions violated ORS 659A.082.

112.    Plaintiff is entitled to a declaration that Evergreen violated Plaintiff's right to be free from discrimination in the workplace due to her service in the uniformed services.

113.    Plaintiff is entitled to reinstatement to her position and an injunction against future discrimination.

114.    As a direct and proximate result of defendant's conduct, Plaintiff has suffered lost income and benefits, including prejudgment interest, all to her economic detriment, in an amount to be determined at trial.

115.    As a direct and proximate result of defendant's actions as alleged herein, Plaintiff has suffered noneconomic harm in the form of emotional and mental distress, degradation, embarrassment and humiliation, for which Plaintiff seeks compensation in an amount of $500,000.

116.    The actions of defendant as alleged herein were intentional, willful, and with reckless disregard to Plaintiff's statutory rights.    Such conduct exceeds the bounds of social toleration and is of the type that punitive damages deter.    Plaintiff, therefore, is entitled to an award of punitive damages in an amount of $500,000.

117.    Plaintiff has hired legal counsel to prosecute her claims and is entitled to her reasonable attorneys' fees and costs incurred, including expert witness fees, pursuant to ORS 659A.885 and ORS 20.107.

### FIFTH CLAIM FOR RELIEF
### WAGE CLAIM RETALIATION
### Violation of ORS 652.355
### Against Defendant Evergreen

118.    Plaintiff incorporates by reference the allegations set forth in paragraphs 11 through 78.

119.    Plaintiff engaged in protected activity making a wage claim to Evergreen and by objecting to Evergreen's attempt to unlawfully deduct wages from her paycheck, in violation of ORS 652.610

120.    Defendant, in response to Plaintiff's wage claim, terminated her employment.

121.    Defendant's actions were intentional and constituted unlawful discrimination in violation of ORS 652.355.

122.    Plaintiff is entitled to all appropriate injunctive relief, including but not limited to reinstatement.

Page 17 -    **COMPLAINT**

123.     As a direct and proximate result of defendant's actions as alleged herein, Plaintiff has suffered economic losses in the form of back pay, front pay, lost benefits, and out-of-pocket expenses, in an amount to be proven at trial, plus interest thereon at the statutory rate of 9%.

124.     As a direct and proximate result of defendant's actions as alleged herein, Plaintiff has suffered noneconomic harm in the form of emotional and mental distress, degradation, embarrassment and humiliation, for which Plaintiff seeks compensation in an amount of $500,000.

125.     Plaintiff has hired legal counsel to prosecute her claims and is entitled to her reasonable attorney's fees and costs incurred, including expert witness fees, pursuant to ORS 659A.885 and ORS 20.107.

### SIXTH CLAIM FOR RELIEF
### RETALIATION FOR OPPOSING UNLAWFUL PRACTICES
#### Violation of 42 U.S.C. §§ 2000e et. seq.
#### Against Defendant Evergreen

126.     Plaintiff incorporates by reference the allegations set forth in paragraphs 11 through 78.

127.     Defendant Evergreen retaliated against and terminated Plaintiff because she reported and opposed unlawful discrimination in the workplace.

128.     Evergreen's actions violated 42 U.S.C. §§ 2000e et. seq.

129.     Plaintiff is entitled to a declaration that defendant has violated her statutory right to be free of retaliation due to her opposition to unlawful conduct.

130.     Plaintiff is entitled to reinstatement to her position and an injunction against future retaliation.

131.     As a direct and proximate result of defendant's conduct, Plaintiff has suffered lost income and benefits, including prejudgment interest, all to her economic detriment, in an amount to be determined at trial.

132.     As a direct and proximate result of defendant's retaliatory conduct, Plaintiff has suffered embarrassment, anxiety, humiliation, anger, emotional distress, inconvenience, and loss

of enjoyment of life and is entitled to an award of compensatory damages in the amount of $500,000.

133.    The actions of defendant as alleged herein were intentional, willful, and with reckless disregard to Plaintiff's statutory rights.    Such conduct exceeds the bounds of social toleration and is of the type that punitive damages deter.    Plaintiff, therefore, is entitled to an award of punitive damages in an amount of $500,000.

134.    Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorneys' fees, expert fees and costs incurred herein

### SEVENTH CLAIM FOR RELIEF
### RETALIATION FOR OPPOSING UNLAWFUL PRACTICES
### Violation of ORS 659A.030(1)(f)
### Against Defendant Evergreen

135.    Plaintiff incorporates by reference the allegations set forth in paragraphs 11 through 78.

136.    Defendant Evergreen retaliated against and terminated Plaintiff because she reported and opposed unlawful discrimination in the workplace.

137.    Evergreen's actions violated ORS 659A.030(1)(f).

138.    Plaintiff is entitled to a declaration that defendant has violated her federal statutory right to be free of retaliation based on her opposition to unlawful conduct.

139.    Plaintiff is entitled to reinstatement to her position and an injunction against future retaliation.

140.    As a direct and proximate result of defendant's conduct, Plaintiff has suffered lost income and benefits, including prejudgment interest, all to her economic detriment, in an amount to be determined at trial.

141.    As a direct and proximate result of defendant's conduct, Plaintiff has suffered and

Page 19 -    **COMPLAINT**

will continue to suffer from emotional distress, anxiety, humiliation, embarrassment, damage to her professional reputation, and diminished earning capacity, and is entitled to an award of compensatory damages in the amount of $500,000.

142.    The actions of defendant as alleged herein were intentional, willful, and with reckless disregard to Plaintiff's statutory rights.    Such conduct exceeds the bounds of social toleration and is of the type that punitive damages deter.    Plaintiff, therefore, is entitled to an award of punitive damages in an amount of $500,000.

143.    Plaintiff is also entitled to recover her reasonable attorneys' fees and costs pursuant to ORS 20.107 and ORS 659A.885(1).

**EIGHTH CLAIM FOR RELIEF**
**WHISTLEBLOWING**
**ORS 659A.199**
**Against Defendant Evergreen**

144.    Plaintiff incorporates by reference the allegations set forth in paragraphs 11 through 78.

145.    Defendant Evergreen retaliated against and discharged Plaintiff because she opposed actions which Plaintiff believed, in good faith, to evidence a violation of federal and state laws.

146.    Plaintiff is entitled to a declaration that defendant has violated her statutory right to be free of discrimination due to her opposition to unlawful conduct.

147.    Plaintiff is entitled to reinstatement to her position and an injunction against future discrimination.

148.    As a direct and proximate result of defendant's conduct, Plaintiff has suffered lost income and benefits, including prejudgment interest, all to her economic detriment, in an amount to be determined at trial.

149.    As a direct and proximate result of defendant's discriminatory conduct, Plaintiff

has suffered embarrassment, anxiety, humiliation, anger, emotional distress, inconvenience, and loss of enjoyment of life and is entitled to an award of compensatory damages in the amount of $500,000.

150.     The actions of defendant as alleged herein were intentional, willful, and with reckless disregard to Plaintiff's statutory rights.   Such conduct exceeds the bounds of social toleration and is of the type that punitive damages deter.   Plaintiff, therefore, is entitled to an award of punitive damages in an amount of $500,000.

151.     Plaintiff is also entitled to recover her reasonable attorneys' fees and costs pursuant to ORS 20.107 and ORS 659A.885(1).

**NINTH CLAIM FOR RELIEF**
**AIDING AND ABETTING DISCRIMNATION**
**ORS 659A.030(1)(g)**
**Against Defendant Wahlberg**

152.     Plaintiff incorporates by reference the allegations set forth in paragraphs 11 through 78.

153.     Defendant, in violation of ORS 659A.030(1)(g), aided and abetted efforts to unlawfully discriminate against Plaintiff because of her sex, in violation ORS 659A.030 and because of her military service, in violation of ORS 659A.082.

154.     Defendant, in violation of ORS 659A.030(1)(g), aided and abetted efforts to unlawfully retaliate against Plaintiff due to her opposition to national origin discrimination, in violation of ORS 659A.030.

155.     Plaintiff is entitled to a declaration that defendant aided and abetted Evergreen's efforts to engage in unlawful sex discrimination, unlawful sex stereotyping, unlawful discrimination on the basis of military service, and unlawful retaliation.

156.     As a direct and proximate result of defendant's conduct, Plaintiff has suffered lost income and benefits, including prejudgment interest, all to her economic detriment, in an amount to be determined at trial.

157.     As a direct and proximate result of defendant's actions as alleged herein, Plaintiff has suffered noneconomic harm in the form of emotional and mental distress, degradation, embarrassment and humiliation, for which Plaintiff seeks compensation in an amount of $500,000.

158.     The actions of defendant as alleged herein were intentional, willful, and with reckless disregard to Plaintiff's statutory rights.   Such conduct exceeds the bounds of social toleration and is of the type that punitive damages deter.   Plaintiff, therefore, seeks punitive damages against Wahlberg in his individual capacity in an amount to be determined at trial.

159.     Plaintiff has hired legal counsel to prosecute her claims and is entitled to her reasonable attorneys' fees and costs incurred, including expert witness fees, pursuant to ORS 659A.885 and ORS 20.107.

## DEMAND FOR A JURY TRIAL

160.  Plaintiff makes a demand for a jury trial.

WHEREFORE, Plaintiff prays for judgment against defendants as follows:

1.     On Plaintiff's First Claim for Relief:

    a.     A declaration that defendant violated Plaintiff's statutory right to be free of sex discrimination;

    b.     Reinstatement and an injunction against future discrimination;

    c.     An award of economic damages for past and future lost wages and benefits and out-of-pocket expenses, plus prejudgment interest, in an amount to be determined at trial;

    d.     Compensatory damages in the amount of $500,000;

   e.  Punitive damages; and

   f.  Plaintiff's attorneys' fees, expert witness fees and costs pursuant to 42

      U.S.C. § 1988.

 2.  On Plaintiff's Second Claim for Relief:

   a.  A declaration that defendant violated Plaintiff's statutory right to be free of

      sex discrimination;

   b.  Reinstatement and an injunction against future discrimination;

   c.  An award of economic damages for past and future lost wages and benefits

      and out-of-pocket expenses, plus prejudgment interest, in an amount to be

      determined at trial;

   d.  Compensatory damages in the amount of $500,000;

   e.  Punitive damages; and

   f.  Plaintiff's attorneys' fees, expert witness fees, and costs pursuant to ORS

      20.107 and ORS 659A.885.

 3.  On Plaintiff's Third Claim for Relief:

   a.  A declaration that defendant willfully violated Plaintiff's right to be free of

      discrimination based on her military service or military service obligations;

   b.  Reinstatement and an injunction against future discrimination;

   c.  An award of economic damages for past and future lost wages and benefits

      and out-of-pocket expenses, plus prejudgment interest, in an amount to be

      determined at trial;

   d.  Liquidated damages; and

   e.  Plaintiff's attorneys' fees, expert witness fees and costs pursuant to 38

U.S.C. §4323(h)(2).

4.   On Plaintiff's Fourth Claim for Relief:

    a.   A declaration that defendant violated Plaintiff's right to be free of discrimination based on her military service or military service obligations;

    b.   Reinstatement or other appropriate injunctive relief;

    c.   An award of economic damages for past and future lost wages and benefits and out-of-pocket expenses, plus prejudgment interest, in an amount to be determined at trial;

    d.   Compensatory damages in the amount of $500,000;

    e.   Punitive damages; and

    f.   Plaintiff's attorneys' fees, expert witness fees and costs pursuant to ORS 20.107 and ORS 659A.885.

5.   On Plaintiff's Fifth Claim for Relief:

    a.   A declaration that defendant violated Plaintiff's statutory right to be free of discrimination and retaliation for exercising her lawful right to report a wage claim;

    b.   All appropriate injunctive relief, including but not limited to reinstatement;

    c.   An award of economic damages for past and future lost wages and benefits and out-of-pocket expenses, plus prejudgment interest, in an amount to be determined at trial;

    d.   Compensatory damages in the amount of $500,000;

    e.   Plaintiffs' attorney's fees, expert witness fees and costs incurred pursuant to ORS 20.107 and ORS 659A.885.

6.      On Plaintiff's Sixth Claim for Relief:

   a.      A declaration that defendant violated Plaintiff's statutory right to report and resist unlawful discrimination in the workplace;

   b.      Reinstatement and an injunction against future retaliation;

   c.      An award of economic damages for past and future lost wages and benefits and out-of-pocket expenses, plus prejudgment interest, in an amount to be determined at trial;

   d.      Compensatory damages in the amount of $500,000;

   e.      Punitive damages; and

   f.      Plaintiff's attorneys' fees, expert witness fees and costs pursuant to 42 U.S.C. § 1988.

7.      On Plaintiff's Seventh Claim for Relief:

   a.      A declaration that defendant violated Plaintiff's statutory right to report and resist unlawful discrimination in the workplace;

   b.      Reinstatement and an injunction against future retaliation;

   c.      An award of economic damages for past and future lost wages and benefits and out-of-pocket expenses, plus prejudgment interest, in an amount to be determined at trial;

   d.      Compensatory damages in the amount of $500,000;

   e.      Punitive damages; and

   f.      Plaintiff's attorneys' fees, expert witness fees, and costs pursuant to ORS 20.107 and ORS 659A.885.

8.    On Plaintiff's Eighth Claim for Relief:

    a.    A declaration that defendant violated Plaintiff's statutory right to oppose unlawful actions in the workplace;

    b.    Reinstatement and an injunction against future discrimination;

    c.    An award of economic damages for past and future lost wages and benefits and out-of-pocket expenses, plus prejudgment interest, in an amount to be determined at trial;

    d.    Compensatory damages in the amount of $500,000;

    e.    Punitive damages; and

    f.    Plaintiff's attorneys' fees, expert witness fees and costs pursuant to ORS 20.107 and ORS 659A.885.

9.    On Plaintiff's Ninth Claim for Relief:

    a.    A declaration that defendant aided and abetted unlawful discrimination against Plaintiff;

    b.    An award of economic damages for past and future lost wages and benefits and out-of-pocket expenses, plus prejudgment interest, in an amount to be determined at trial; and

    c.    Compensatory damages in the amount of $500,000;

    d.    Punitive damages; and

    e.    Plaintiff's attorneys' fees, expert witness fees and costs pursuant to ORS 20.107 and ORS 659A.885.

10.    Any further or alternative relief in favor of Plaintiff that the court deems appropriate.

11.    Plaintiff demands a jury trial.


DATED this 23rd day of February, 2012.


BUCHANAN ANGELI ALTSCHUL
& SULLIVAN LLP

_____

Dana L. Sullivan, OSB No. 94483
Telephone: (503) 974-5023